STATE OF TENNESSEE ex rel. EARL C. DOBBINS

*v.*

BURYL LARRY.

(*Jackson,* April Term, 1959.)

Opinion filed February 5, 1960.

262

HEATHCOCK, ELAM & CLOYS, Union City, for appellant.

MILES & MILES, Union City, for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This bill was filed in the name of the State, upon the relation of a citizen, against the respondent Larry claiming that Larry was a usurper in the office of Magistrate in the Ninth District of Obion County. The Chancellor heard the case on oral testimony and after a complete hearing of both sides determined that the respondent Larry had not carried the burden of proof and was therefore a usurper in this office. An exception was taken to this decree, bill of exceptions filed, assignments of errors

and brief and oral arguments have been heard. We now have the matter for disposition after several days investigating the authorities and reading the transcript and able briefs herein.

In 1956 the relator Dobbins was elected as a Justice of the Peace to fill the unexpired term of another party for the Ninth District of Obion County. Under this election his term of office would expire on September 1, 1960. In 1957 Dobbins moved across the road from one place where he lived to another. After his removal a number of citizens by petition appeared before the election commission and claimed that the place to which Dobbins had moved was in the Fourteenth and not in the Ninth District of Obion County. The Election Commission made an investigation and determined that this petition was correct and thus called an election for the vacancy which would have been created had Dobbins moved out of the Ninth District.

The Statute, Section 19-112, T.C.A., provides that the office of Justice of the Peace shall be vacant if they move from their district. After this election was called and notices posted it was protested and a suit filed attempting to enjoin the election. This suit was dismissed, and after the election, Larry, being the only candidate, was elected pursuant to this special election. After this the present suit was filed in the nature of a quo warranto and is brought under Section 23-2804, T.C.A. This Section of the Code, and the suit here brought is brought in the name of the District Attorney for the purpose of assailing the title to the office which Larry claims by reason of the special election. Under such a situation the only question then before the Chancellor is a fact question as to whether or not this office had become vacant by the

removal of the Justice of the Peace from one District to another. *State ex rel. Cannon v. Lee,* 124 Tenn. 385, 136 S.W. 997. As said above the Chancellor after hearing the proof pro and con, which is preserved in the transcript of some 295 pages, determined that Larry had failed to carry the burden of proof which was his obligation in this type of suit and thus had failed to show that there was a vacancy in the office of Justice of the Peace for the Ninth District of Obion County in that he had failed to show that Dobbins had moved out of this District.

■ Before proceeding to the merits of the lawsuit it is necessary for us to dispose of a motion by the appellee herein that we affirm the judgment and dismiss the appeal because the bill of exceptions was not filed within the time allowed by law. This motion must be overruled because it is shown that on the date that the final decree was entered herein, in that decree, the Chancellor allowed the appellant 90 days within which to prepare and file his bill of exceptions. The bill of exceptions was filed on the 65th day or well within the 90 days. The argument on this motion is based upon, primarily, Section 27-111, T.C.A., upon the theory that the Chancellor is without authority, at the time he enters this final decree, to allow as much as 90 days. This, we think, is a mistaken idea. The Statute allows the trial judge within the 30 days period after final judgment to extend the time for filing the bill of exceptions ''for not exceeding an additional sixty (60) days''. Thus if in his final decree he allows as much as 90 days he is not exceeding his authority because as a matter of right the party has 30 days within which to perfect his appeal and if this 30 days is extended 60 days it would clearly show that the Court may in his

first order in entering the final decree allow as much as 90 days. The Statute allows this total amount. See *O'Brien v. State,* 205 Tenn. 405, 326 S.W.2d 759. Thus it is that this motion must be overruled.

The assignments of error raise at least 2 very interesting questions, one of which has not been decided directly by this Court yet it was decided directly by the old Court of Chancery Appeals in an opinion by then Judge Neil, who was afterwards on this Court, in one of his well reasoned opinions quoting at length, as he generally did, from well reasoned authority on both sides of the question. In *State ex rel. Attorney General v. Allen,* Tenn.Ch. App., 57 S.W. 182, and particularly at page 189 of that report, the Court of Chancery held that:

"When the defendant is called upon to show his title, his plea or answer presents the first issue of fact, and the burden of proof is upon him to establish it."

As said, the Court cites numerous authorities for this position and reasons the matter pro and con. This is today the general rule of the subject. See 44 Am.Jur., page 168, Section 107, where among other things it is said:

"* * * it is incumbent upon the respondent to show a good legal title, and not merely a colorable one, for he must rely wholly on the strength of his own title; * * *".

See likewise 74 C.J.S. Quo Warranto sec. 43, p. 259. The Court of Chancery Appeals, too, in *State v. Duncan,* 1901, in 1 Tenn.Ch.App. 334, followed the same reasoning, that is when a suit is brought in the name of the State attacking the title to the office of the defendant or

respondent in a lawsuit the burden is upon the one who is claimed to be a usurper to show that he is entitled to this office.

The reasons set forth in *State ex rel. Attorney General v. Allen,* 57 S.W. 182, supra, of why this is the rule are set forth at length therein by quotations from opinions of other jurisdictions and it is not necessary for us to here repeat those reasons.

It is very ably argued here by the appellant, and very persuasively, that since the relator is the one claiming the office held by the respondent that the ordinary rules of procedure of the plaintiff having to carry the burden of proof should be applicable. There are many authorities cited to support this argument. The primary authorities though come from the States that did not recognize the old theory upon which the rule was originally established. The principal cases which are cited in *State ex rel. Attorney General v. Allen,* supra, setting forth the rule and the reason therefor are New York cases. The New York Court long ago in *People v. Perley,* 80 N.Y. 624, held that this rule should apply even where the action is brought in the name of the State at the instance of a private person. We see no reason now to void this rule in this State or to adopt another rule even though the rule was originally based on fiction. It has become, in the first instance, more or less an accepted fact in this State in a quo warranto attacking the right of the respondent or defendant to hold office that it is necessary that this person under these quo warranto actions show the right to the office. This seems particularly applicable under the facts of the instant case. Here a party is elected to an office by reason of the fact that he claims that another party has vacated that office. In other words

the action is brought against the person, that is Larry, who claims to hold the office because he in effect is usurping the office that the other person has. Consequently it seems reasonable and right that when he is usurping or taking over this office which the other has that the burden should be on him to show the right to this office. We thus overrule the assignments of error based on the question of the burden of proof and concur with the Chancellor therein.

██ We have spent two days reading the transcript of the evidence offered by both sides on this fact question, that is, whether or not Dobbins when he moved across the road from one place to another moved out of the Ninth District and into the Fourteenth District. It has really been rather fascinating and interesting to sit down and read this large volume of proof wherein lawyers have testified on each side and their brilliant objections and the banter back and forth between them, each side offers a banker in support of the position that the present home of Dobbins is in or out (in the Fourteenth or the Ninth District); census takers over a period of years at 20 and 40 and 50 are offered by the one side or the other to show what district he was in. It is shown that voters voted in either one of the districts and a map is prepared by the appellant for the purpose of the witnesses pointing out that the place where Dobbins now lives is in the Fourteenth and not in the Ninth District. Maps are offered by the appellee Dobbins which were made by the State in cooperation with the United States Geological Survey crew establishing the line and still keeping Dobbins in the Ninth District. After reading all of these things (of course we have tried this de novo here as is our duty when a Chancery case is tried irregularly as was

this, *Town of Alamo v. Forcum-James*, 205 Tenn. 478, 327 S.W.2d 47) we find ourselves in very much the same position as the Chancellor did after hearing this, that the scales are in equipoise as to whether or not the house of Dobbins is in the Fourteenth or the Ninth District. This being true of course the respondent has failed to carry the burden of proof and therefore the Chancellor was right in vacating this special election under which he claims the office and in leaving Dobbins in the office to which he had been elected in 1956.

We could comment at length on this evidence pro and con. The people from the time of the requirement for registration apparently voted wherever they registered and they registered wherever it was probably most convenient for them to go and vote regardless of what district they lived in. So this proof is not particularly valuable one way or the other. Probably the only proof herein and the other proof offered, except the various deeds and petition suits, etc., as to whether or not Dobbins house was in the Ninth or the Fourteenth District was a question of reputation, what old people who testified herein said and what the young ones said that other old people had told them in years gone by as to which road separated these districts. Numerically the witnessees may be more on the side of the appellant than on the side of the appellee, but as far as we can see their proof about balances. The various deeds and partition suits of the land where Dobbins now lives is over a period of years sometimes shown in one district and sometimes in another district. The recent deeds in which Dobbins gave trust deeds, etc., show the land to be in the Fourteenth District. All of these things are fact questions for the trier of facts. Of course the Chancellor who heard

this proof had these witnesses before him and is the judge of the credibility of these various witnesses. He could see them and we cannot, we merely have to make up our minds from reading the transcript of this evidence. After seeing and hearing these witnesses testify all the way through the Chancellor was not able to determine where the line was. As he said once or twice during the trial of the case "the sixty-four dollar question was where the District line is."

In 1860, the County Court of Obion County authorized these district lines to be laid off, District Nine and Fourteen established the lines between them. There is no record to be found. As this proof shows that they have searched everything where there could possibly be any trace of it in Obion County, gone to the Secretary of State and to the State Archives and everywhere else. Thus it is there is no record of where these district lines are separating these two districts and in the end the matter largely comes down to a matter of reputation and as we said above this is in equipoise.

We next come to the question, which was very ably argued at the Bar and in the brief, as to the admissibility of certain maps offered herein on behalf of the appellee, Dobbins. These maps were prepared under the direction of Mr. Raleigh Robinson in conjunction with the United States Geological Survey in the middle 1930's pursuant to Statute secs. 11-501—11-507, T.C.A. The various counties in the State were furnished there different maps. Copies of these maps were furnished different officers in the courthouse and one or two were hung in the courthouse showing these district lines, and have according to this record been there in the courthouse

over a period of approximately 20 years. It is shown by examination of Robinson and others that the field representative before these maps were drawn got information from individuals and records and anything else that they could find (there are no records shown). Under this record the information that these field representatives got was from reputation, and apparently the people they saw were the ones that take the side of the appellee herein, that the line was the Fairview Church Road line which would make the property of Dobbins in the Ninth District. At least on these maps that were drawn this line is shown as a district line and it puts Dobbins in the Ninth District.

The introduction of these maps was objected to because they were not ancient documents. The Chancellor probably, and the only thing that we can see that he considered them for, took into consideration how they were made and merely weighed them and the evidence along with the other evidence of reputation. He treated them more or less like reputation even though they were based on the reputation given these surveyors some 20 years before. Be this as it may it is not necessary for us herein to determine that these are authentic maps and show the county line because it is not necessary in this action to determine where these district lines are.

■ Thus it is that we think that the Chancellor, as have we, had a right to consider these maps on the basis of how they are made up, the probability of errors or mistakes (in view of the evidence that they may be as much as a quarter of a mile off on some of these lines). Thus it is that the map is not considered as an official and adopted map absolutely setting forth the lines but

it like the other evidence of reputation is admissible for that purpose under the facts on which it was made, and for no other.

So far as this record shows there is no absolute line upon which it could be established that separates these districts. This question of definitely fixing these lines is up to the County Court of the County and this could be done by them and might save future litigation.

Questions of this kind of course rarely happen but when they do they are border line questions where one side of the road might be in one district and the other side in another district. Generally no one pays any attention to such a little thing unless there is some political reason back of it as is shown that there was in this instance. Of course this has nothing to do with the determination of the lawsuit but is merely cited as a reason of why the lawsuit arose in the beginning. We have very carefully read the very able briefs, have given the matter a good deal of thought and study and are satisfied that the Chancellor was correct in his determination of the matter. Thus it is that the decree of the Chancellor is affirmed.